UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES R. BERTHOLD,<br>       Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Civ. No. 17-6518 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Mr. James Berthold brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

### I.  BACKGROUND

The claimant, Mr. Berthold, seeks to reverse a finding that he did not meet the Social Security Act's definition of disability from May 13, 2013, the onset date, through September 30, 2014, the late last insured. (R. 26).[1] The claimant filed his original application on January 6, 2014. (R. 17) The claim was denied on August 26, 2014. (R. 17) The claimant received a hearing before Administrative Law Judge Ricardy Damille on April 29, 2016. (A copy of the

---

[1]  Citations to the record are abbreviated as follows:
"R." = Administrative Record (DE 7)
"Pl. Br." = Memorandum of Law on Behalf of the Plaintiff (DE 9)
"Def. Br." = Defendant's Brief Pursuant to Local Civil Rule 9.1 (DE 16))

1

Hearing Transcript ("Tr.") is at R. 33–58.) Mr. Berthold, who was represented by counsel, testified, as did a Vocational Expert ("VE"), Andrew Vaughn.

On June 17, 2016, the ALJ issued a decision which found the claimant not disabled for purposes of the Social Security Act. (R. 14-32). Mr. Berthold, still represented by counsel, sought review from the Appeals Council, which denied review, rendering the ALJ's decision final. (R. 1-4). This district court action followed.

## II. ALJ'S DECISION AND STANDARD OF REVIEW

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

2

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### B. The ALJ's Decision

ALJ Ricardy Damille followed the five-step process in determining that Mr. Berthold was not disabled in the relevant period. The ALJ's findings may be summarized as follows:

**Step One:** At step one, the ALJ found that Mr. Berthold had not engaged in substantial gainful activity from May 1, 2013, through September 30, 2014. (R. 19).

**Step Two:** At step two, the ALJ determined that Mr. Berthold had the following severe impairments: degenerative disc disease of the back; cervical myelopathy; PTSD; and osteoarthritis of the left hip. (R. 19).

**Step Three:** At step three, the ALJ found that Mr. Berthold did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 20-21).

3

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Mr. Berthold had the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is able to stand for four hours in an eight-hour day. He is able to occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop and crawl. He is able to frequently handle and finger with the hands. He must avoid concentrated exposure to extreme cold, extreme heat, and humidity. He must avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation. He can understand, remember, and carry out simple instructions, and can handle changes to essential job functions on an occasional basis. He is limited to occasional interaction with coworkers and the public.

(R. 21). The ALJ also determined that Mr. Berthold was unable to perform past relevant work as a delivery truck driver, patrol officer, or solar energy systems installer helper, either specifically or as generally performed. The demands of those jobs exceed his RFC. (R. 25).

**Step Five:** At step five, the ALJ considered Mr. Berthold's age, education, work experience, and RFC, and found that he could perform jobs that existed in significant numbers in the national economy. In doing so, the ALJ consulted the Medical-Vocational Guidelines. (R. 25–26). The Medical-Vocational Guidelines are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. Pt. 404, subpt. P, app. 2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* Relying on the testimony of the VE, the ALJ identified several representative jobs that Mr. Berthold could perform despite the limitations of his RFC: "mail clerk, light, SVP of 2, 70,000 jobs nationally; addressing clerk, sedentary, SVP of 2, 62,000 jobs nationally; or order clerk, sedentary, SVP of 2, 163,000 jobs nationally (Dictionary of Occupational Titles, U.S. Dep't of Labor, code 209.687-026; 209.587-010; 209.567-014)." (R. 26).

4

The ALJ therefore determined that Mr. Berthold was "not disabled" for purposes of the Social Security Act. (R. 26–27).

### C. This Court's Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for

5

a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### III. DISCUSSION
#### A. RFC Determination

Mr. Berthold challenges the ALJ's determination of his RFC. First, he faults the ALJ for failing to properly weigh the claimant's credibility. Second, he states more generally that the ALJ did not weigh the evidence properly, and in particular failed to give sufficient weight to the opinion of Mr. Berthold's treating physicians. The ALJ's conclusions, however, were supported by substantial evidence.

The ALJ credited the evidence that Mr. Berthold suffered from several documented medical impairments: degenerative disc disease of the back; cervical myelopathy; PTSD; and osteoarthritis of the left hip. (R. 19) The symptoms claimed as a result of those impairments were as follows:

> The claimant alleges that tingling and numbness in his hands and feet, low back pain, left side hip pain, fatigue, shoulder pain, leg twitching, wheezing, and psoriasis boils prevents him from working (Ex. IE at 2). The claimant testified that he has mood swings, anger, anxiety panic attacks, and increased isolation as a result of his PTSD. He testified that he can lift up to a gallon of milk, walk up to two blocks, and stand a few minutes at a time. The claimant also alleged that he has difficulty concentrating and remembering directions.

6

(R. 22) The ALJ did not reject these claims out of hand; indeed, he accepted that the medical impairment would reasonably be expected to produce such symptoms. Where the ALJ parted company with the claimant was in relation to the "intensity, persistence and limiting effects of these symptoms," which, he found, were "not entirely consistent with the medical evidence and other evidence in the record." (R. 22)

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F. 2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit her ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence . . . is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

7

The ALJ's credibility determination "must contain specific reasons for the finding reasons for the weight given to the individual's symptoms" and "be consistent with and supported by the evidence." SSR 16-3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

The ALJ here discharged that obligation. His decision, supported by substantial evidence in the record, represents a classic weighing of the evidence to which this Court must defer.

Initially, counsel for the claimant argues that the ALJ was insufficiently specific about his reasons for discounting Berthold's testimony, and inaccurate in his on-the-record comments. Counsel pronounces himself "appalled" at the ALJ's recital of Mr. Berthold's ability to perform such daily activities as caring for a pet, driving, shopping, and so on. (Pl. Br. at 5) The ALJ, he says, seems "unaware that a claimant's ability to perform his or her daily activities does not equate to the ability to do substantial gainful activity on a sustained basis. Makovics v. Schweiker, 577 FSupp [sic] 1287 (d. Del [sic] 1983)."

The ALJ was not "unaware" of his obligation to weigh all of the evidence. True, he briefly cited the testimony of the claimant's girlfriend regarding the claimant's ability to perform a wide range of daily activities. (R. 24) The ALJ noted that such activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*) Daily activities, however, were but one component of the ALJ's analysis. The ALJ considered the claimant's complaints, weighing them in light of a thorough review of all the medical and non-medical evidence, as he was obligated to do.[2]

---

[2] Counsel also takes exception to what he portrays as the ALJ's purposeful misstatement of the onset date. Counsel stated on the record that the "amended" onset date, at least for PTSD, was April 1, 2014; prior to then, he stated, the mental

8

The ALJ noted an extensive history of clinical findings that were not consistent with the claimant's complaints:

> The medical record indicates some complaints but clinical findings are not consistent with the claimant's allegations. In January 2014, the claimant was found to have degenerative disc disease of the lumbar spine, cervical myelopathy, and osteoarthritis of the left hip. Examination of the cervical spine revealed active range of motion, and negative seated straight leg raise and Spurling test for radicular symptoms. In addition, motor strength was five out of five (Ex. 3F at 65-66). Regarding the claimant's nerve pain, in January 2014, the claimant complained of pain in his hands but a nerve conduction study was normal (Ex. 3F at 2). There were no findings of cervical or lumbar radiculopathy and it was noted that the claimant did not meet the minimum criteria for peripheral polyneuropathy (Ex. 12F at 60, 241). In March 2014, the claimant underwent an MRI of the lumbar spine that found L5-S1 broad based bulging and right neuroforaminal stenosis. The cervical spine showed congenital fusion of C5, C6, C7, and T1 with severe left neuroforaminal stenosis at C3-C4 (Ex. 3F at 9). The claimant also underwent an x-ray of the pelvis that was normal except for a cyst in the superior left acetabulum (Id. at 127). X-rays of the feet found only mild osteoarthritic changes and x-rays of the wrists showed no arthritic changes, but small arthritic spurs were noted in the elbows (Id. at 123-124). In April 2014, Dr. Changarmk Sivadas, consultative internist, noted that the claimant did not use any ambulatory aids (Ex. 2F at 1). He found a spasm in the cervical spine with limited of range of motion in all directions, and limited range of motion in the lumbar spine. The claimant was also found to have normal hips and full muscle strength with no straight leg raise issues. The claimant underwent an x-ray of the lumbar spine showed degenerative changes at L5-S1. Dr. Sivadas also noted that the claimant had normal gross and fine finger movements (Ex. 2F at 2). In July 2014, examination records indicate full muscle strength throughout his extremities (Ex. 3F at 5). Imaging results from

---

condition had been treated as an adjustment disorder. (R. 38–39) The ALJ's decision found no disability for the entire period May 1, 2013, through September 30, 2014. It was based, not only on the recently-diagnosed PTSD, but also on other chronic conditions based on evidence dating from before April 1, 2014. This error, if that is what it was, could not have affected the result.

9

> February 2015 found no abnormalities in the bilateral hips (Ex. 12F at 9).
>
> Regarding the claimant's PTSD and adjustment disorder, the record does not indicate limitations that would prevent him from performing basic work activities. In June 2014 the claimant was diagnosed with PTSD and in July 2014 he was noted to be clinically stable (Ex. 3F at 8; Ex. 11F at 5). In August 2014, the consultative psychologist, Dr. Fulford, noted that the claimant has ever been hospitalized for any psychiatric disorder. Upon examination, Dr. Fulford found the claimant to have a substantially normal mental status examination (Ex. 4F). In October 2015 the claimant was noted to be negative for depression or anxiety and his mental status examination as normal (Ex. 12F at 62).

(R. 22-23) The ALJ accepted and gave weight to this medical evidence.

The ALJ then discussed the medical evidence, both positive and negative from the claimant's point of view, that he did not fully accept. In doing so, he discharged his obligation to give reasons for his credibility determinations.

The ALJ considered but discounted the report of a medical consultant, Dr. Frederick, Cohen. This consultant, the ALJ wrote, had not personally examined the claimant, and the other medical evidence actually supported *greater* limitations than those found by Dr. Cohen. (R. 23)

The ALJ considered but discounted a March 2016 letter from RobertReynolds, VA Benefits Assistance Direct, stating that Mr. Berthold has a permanent total disability. Mr. Reynolds, the ALJ wrote, did not appear to be a "medically acceptable source," his letter did not note particular functional limitations, and the VA's standards for disability are not the same as those of the SSA. (R. 23) For similar reasons he discounted a March 2015 VA medical record indicating 70% disability due to PTSD. (R. 23-24)

The ALJ discounted a March 2016 GAF score of 41, because it is a "one-time snapshot," which "may not represent longitudinal difficulties." (R. 23) (I take that to mean, among other things, that it dates from well after the relevant period and does not measure impairments over time.)

10

Finally, the ALJ considered but discounted the opinions of two treating physicians: Dr. Yousef Kat and a psychologist, Dr. Mark Vogel. (R. 23, 24)

"[T]he opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). Nevertheless, a treating physician's opinion is entitled to careful consideration. Thus, for example, the courts will "give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion will be accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); see *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000);; see also 20 C.F.R. § 404.1527(c)(2). An ALJ may therefore reject a treating physician's opinion, but "only on the basis of contradictory medical evidence." *Morales*, 225 F.3d at 318 (internal quotation marks omitted). An ALJ may discount any physician's opinion, including a treating doctor's, where the opinion is conclusory, inconsistent with the record as a whole, or other facts contradict the veracity of the opinion. 20 C.F.R. § 404.1527(c)(3)-(6).

The opinions of treating professionals, Dr. Kat and Dr. Vogel, did not stand unrebutted by other medical evidence of record. The ALJ gave them respectful consideration and gave cogent reasons for giving them little weight.

As for Dr. Kat, the defendant argues that the record contains no detailed treatment notes, but only a check-box report. (Ex. 10F) Such check-list reports are often discounted on that basis alone, at least where competing, reasoned medical analyses are available. See *Mason v. Shalasla*, 994 F.2d 1058, 1065 (3d Cir. 1993); *Griffin v. Comm'r of Soc. Sec.*, 305 F. App'x 886. 890–91 (3d Cir. 2009). The defendant exaggerates somewhat, in stating that Dr. Kat merely checked boxes; as the claimant's counsel points out, his report contains some

11

limited narrative. (Pl. Brf. 7 (quoting Ex. 10F) ("he has anxiety, anger, difficulties with interpersonal interactions, unable to [t]rust others; he is hyper vigilant and feels [u]nsafe outside the house.").

More important to this Court are the ALJ's substantive reasons for discounting Dr. Kat's analysis:

> Dr. Kat opined that the claimant has a marked limitations in his ability to get along with coworkers or peers without distracting them; and moderate limitations in responding appropriately to changes in the work setting, and tolerating normal levels of stress (Id. at 3-4). He further opined that the claimant would be off task 20 percent of the time and absent 10-13 days per month (Id. at 4). Dr. Kat estimated the claimant's GAF to be 49 - indicating significant limitations. Little weight is given to this opinion because the GAF score is wholly inconsistent with the substantially mild limitations noted in his report. Dr. Kat's opinion that the claimant has marked limitations in getting along with coworkers is unsupported by treatment notes and although the claimant testifiedthat he isolates himself at times, he denied every being fired or laid off from a job for not getting along with people. See Ex. 12E.

(R. 23) Those reasons, particularly in light of the competing medical analyses summarized above, are sufficient.

As for the November 2015 report of Dr. Mark Vogel, a treating psychologist, the ALJ's analysis was mixed. All in all, he found that Dr. Vogel's report was entitled to "some weight," but that its conclusions were not specific:

> In November 2015, the claimant's treating psychologist, Dr. Mark Vogel, opined that the claimant has an occupational and social impairment with deficiencies in most area, such as work, school, family relations, thinking, and mood (Ex. 12F at 145). Some weight is given to this opinion because Dr. Vogel is a treating source but it is unclear the degree of deficiencies the claimant has in those areas or what specific functional limitations the claimant has that would impact work, school, or family relations.

(R. 24) Here, too, the ALJ discharged his duty to justify giving limited weight to the treating psychologist's opinion.

12

Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where this has been done, a reviewing court will defer to the ALJ's credibility determination.

That was done here. The ALJ respectfully considered Mr. Berthold's claims of disabling symptoms, accepted them to a great extent, and where he discounted them, gave reasons that were firmly based in the evidence of record. No more is required to meet the "substantial evidence" standard.

The claimant here challenges the ALJ's fact finding, but does not contend that the RFC is inconsistent with the facts *as found by the ALJ*. I find that the medical facts, as found by the ALJ, do support the limitations of the RFC (quoted at p. 4, *supra*). Having upheld the ALJ's fact finding, I uphold his RFC determination as well.

### B. Step 5: Work Available in the National Economy

Mr. Berthold also challenges the ALJ's Step 5 determination, based on the testimony of the VE, that given his RFC, he is able to perform certain jobs available in the national economy (quoted at p. 4, *supra*). As is often the case, the challenge to the Step 5 finding is really another version of the claimant's challenge to the fact-finding underlying the RFC. No other flaw is alleged. (*See* Pl. Brf. at 8.)

It is true of course that a hypothetical question posed to a VE must reflect all of the claimant's limitations that are supported by substantial evidence, if the VE's opinion is to be valid. *See, e.g., Burns v. Barnhart*, 312

13

F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). That does not mean, however, that the VE must be asked to opine on all imitations *alleged* by a claimant. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead ... hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments ... that are medically established .... [Thus, t]he ALJ must accurately convey to the vocational expert all of claimant's *credibly established limitations*.").

I have already found that the RFC determination was supported by substantial evidence. That RFC was the basis for the VE's opinion regarding jobs in the national economy that a person with Mr. Berthold's limitations could perform. The ALJ did not err at step five.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is affirmed. An appropriate order accompanies this opinion.

Dated: October 17, 2018

**KEVIN MCNULTY**
**United States District Judge**

14